## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INSIGHT GLOBAL, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO:** _____ |
| **v.** | ) | |
| | ) | |
| **JACOB M. GREENBERG and** | ) | |
| **TECHNOLOGY SERVICES,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### INSIGHT GLOBAL, LLC'S COMPLAINT FOR
### INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF

Plaintiff Insight Global, LLC ("Insight Global" or the "Company"), by and through its undersigned counsel, hereby seeks injunctive relief and damages against Defendants Jacob M. Greenberg ("Greenberg") and/or Technology Services, LLC ("Tech Services," and, with Greenberg, "Defendants") for: (i) misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1831, *et seq.* (the "DTSA"); (ii) misappropriation of trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act, codified at 12 Pa. C. S. § 5301, *et seq.* ( "PUTSA"); (iii) breach of the Employment Agreements Greenberg entered into with Insight Global, in which he agreed to reasonable post-employment restrictions; (iv) breach of the Separation Agreement Greenberg entered into with Insight Global; (v) fraud; (vi) breach of the duty of loyalty; (vii) tortious interference with Insight Global's existing and prospective contractual relations; and (viii) Tech Services' tortious interference with Greenberg's Employment Agreement and his Separation Agreement. In support thereof, Insight Global states as follows:

## NATURE OF THE ACTION

1.      Insight Global, a staffing firm with a focus in information technology ("IT"), initiates this action against Greenberg, a former Account Manager for the Company, and Tech Services, a direct competitor of the Company, because it is clear that Greenberg has misappropriated Insight Global's trade secrets for the benefit of his new employer in violation of his statutory, contractual, and common law legal obligations.  Insight Global seeks damages, injunctive relief, prejudgment interest, and attorneys' fees and costs premised on Insight Global's claims against Greenberg, who is one of Insight Global's former employees, and against his new employer, Tech Services.

2.      While employed with Insight Global as both a Recruiter and an Account Manager, Greenberg was entrusted with access to extensive confidential business information and trade secrets regarding Insight Global's business, services, customers and clients, pricing, strategies, and other confidential business and/or financial information.  Amongst other confidential information in this highly competitive industry, Greenberg gained intimate knowledge of Insight Global's key clients in the Philadelphia metro region.  Through his employment at Insight Global, Greenberg understood the key contacts at clients and prospects that both were and influenced the decisionmakers, clients' staffing needs and business preferences, and benefitted from the good will generated from Insight Global's relationship with and investment in its clients.

3.      Because of the importance and competitiveness of client relationships and other trade secrets and confidential information in the IT staffing industry, Insight Global takes meaningful steps to protect its valued information, including having employees like Greenberg,

- 2 -

as a condition of employment, execute employment agreements containing non-disclosure, non-competition, and non-solicitation provisions of reasonable geographic and temporal scope.

4.      On or around June 1, 2017, Greenberg's employment relationship with Insight Global abruptly ended when Greenberg turned in his resignation to his immediate supervisor. At the time of his resignation, in violation of his employment agreement, Greenberg failed to inform his supervisor that he would be joining Tech Services, a competitor of the Company. Instead, Greenberg only referenced an intent to work for Peter Carlyle – who Insight Global later determined was and is the C.E.O. of Tech Services. This competitor's primary office is less than 11 miles away from the office where Greenberg worked for Insight Global. Additionally, Insight Global now understands that Greenberg operates out of Tech Services' primary office in the same or similar position he held at Insight Global and is performing the same or similar services, but for Tech Services rather than for Insight Global. Greenberg's activities on behalf of Tech Services are in direct violation of multiple provisions of his employment agreement.

5.      As a result of a post-employment investigation initiated when it became aware of Greenberg's violations of his post-employment restrictive covenants, Insight Global now has reason to believe that, in the weeks prior to the end of his employment relationship with Insight Global, Greenberg deliberately and knowingly misappropriated a number of documents and information containing Insight Global trade secrets and is now using them to compete with the Company. Suspiciously, in May, Greenberg started accessing confidential client information for accounts for which he had no legitimate reason to view such sensitive information. Within days of Greenberg accessing this information, Insight Global now understands that Greenberg was meeting with Carlyle, presumably to discuss both employment and client opportunities. Glaringly, in this same limited time period, Greenberg proceeded to cancel sales meetings that

would have generated business opportunities for Insight Global with some of the same clients whose business information he inexplicably accessed. And, to crystallize the clear intent of this conduct, Insight Global understands and believes that Greenberg now is soliciting some of these same clients on behalf of Tech Services. Upon information and belief, Greenberg continues to use Insight Global's misappropriated trade secrets in order to unlawfully compete with the Company on behalf of Tech Services, and will continue to do so and cause irreparable harm to Insight Global absent immediate injunctive relief.

6.    Greenberg also signed a separation agreement at the time of his departure from Insight Global. Pursuant to this agreement, Greenberg reaffirmed his commitment to abide by the binding restrictive covenants and non-disclosure obligations in his employment agreement in exchange for a severance payment to which he otherwise would not have been entitled. Greenberg's above-described conduct, however, makes clear that he never intended to abide by these obligations. This constitutes fraud, pure and simple.

7.    Tech Services, with full knowledge of the fact that Greenberg was subject to an employment agreement and the separation agreement with Insight Global that prohibits him from engaging in certain competing activities, hired Greenberg to engage in those very activities and, upon information and belief, conspired with Greenberg to hide such facts from Insight Global.

8.    Under law and equity, Defendants should not be permitted to continue to benefit from their unlawful actions, and the Company should be compensated for the harm that already has been done.

## PARTIES

9.    Plaintiff Insight Global is a limited liability company organized under the laws of the State of Delaware. Insight Global is a citizen of the states of Delaware and Georgia.

- 4 -

Plaintiff's sole member is IG Staffing Holdings, LLC, whose sole member is IG Investments Holdings, LLC, whose sole member is Igloo Intermediate Holdings, Inc. ("IIH"). IIH is a Delaware corporation with its principal place of business in Atlanta, Georgia. Insight Global's headquarters and principal place of business are in DeKalb County, Georgia, located at 4170 Ashford Dunwoody Road, Suite 250, Atlanta, Georgia 30319. Insight Global also maintains an office in Philadelphia, Pennsylvania, located at 1735 Market Street, Suite 3400, Philadelphia, Pennsylvania 19103 (the "Philadelphia Office")

10.     Greenberg is a natural person who, upon information and belief, resides and may be served with process at 1204 Sequoia Road, Cherry Hill, New Jersey 08003.

11.     Tech Services is a limited liability company organized under the laws of the State of New Jersey. Upon information and belief, none of Tech Services members are residents of either the State of Delaware or the State of Georgia. Tech Services' headquarters and principal place of business are located at 800 N. Church Street, Suite 105, Moorestown, New Jersey 08057. Tech Services may be served with process via its Registered Agent Peter Carlyle at 401 W. Third Street, Moorestown, New Jersey 08057.

## JURISDICTION AND VENUE

12.     This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Insight Global asserts federal claims under the DTSA, 18 U.S.C. § 1832, *et seq.* The Court also has supplemental or pendant jurisdiction over the Company's remaining claims against Defendants, pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as the federal question claims.

13.     In addition, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332. This is an action among citizens of different states, there exists complete diversity of

citizenship, and Insight Global seeks actual, compensatory, and punitive damages with a present monetary value, exclusive of costs and interest, well in excess of $75,000.

14.     This Court has personal jurisdiction over Greenberg as he has sufficient minimum contacts with the Commonwealth of Pennsylvania such that exercise of jurisdiction over Greenberg does not offend traditional notions of fair play and substantial justice.

15.     This Court has personal jurisdiction over Tech Services under principles of specific and general jurisdiction as Tech Services conducts significant business in the Commonwealth of Pennsylvania and  has sufficient minimum contacts with the Commonwealth of Pennsylvania such that exercise of jurisdiction over Tech Services does not offend traditional notions of fair play and substantial justice.

16.     Venue is appropriate in this Court under 28 U.S.C. § 1391, as a substantial part of the actions giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

A.  Insight Global Conducts Business in a Highly Competitive Industry, Relying Upon Its Confidential Information and Trade Secrets, Which It Takes Reasonable Steps to Protect

17.     Plaintiff Insight Global is a staffing services company with a focus in the IT, accounting, finance and engineering sectors.  Insight Global provides its clients with both short- and long-term staffing in a broad range of IT, accounting, finance and engineering positions, and also provides direct placement services for permanent positions.   Insight Global regularly provides staffing services to clients throughout the country, including in the Philadelphia metropolitan area.

18.     The staffing industry is highly competitive, particularly in the IT space, with thousands of companies competing for a finite number of clients.  Insight Global has to compete for both talent and clients with many other companies providing similar services in the

- 6 -

marketplace. Insight Global distinguishes itself through its investment in client relationships and training of its personnel, so as to give it a competitive advantage over the competition.

19.     Of significance, in such a competitive market, Insight Global distinguishes itself in part through its deep relationships with and understanding of its customers and their needs. These relationships and knowledge are derived only after investment of substantial time and monetary resources of hundreds of thousands of dollars.

20.     Insight Global's business model is based upon providing extensive and specialized training and experience for its employees. The Company typically hires employees with no prior experience in or knowledge of the staffing industry and provides them with a variety of confidential business and financial information in order to train them effectively to follow Insight Global's successful sales, marketing, and recruiting methods and strategies. Insight Global devotes substantial amounts of time and expense to recruiting and training its employees to prepare them to advance in the Company and to succeed in building relationships with Insight Global's clients.

21.     The Philadelphia Office is an open environment, meaning the office's sales manager, account managers, and recruiters work together in a single open room referred to as the sales floor, or the "pit." To encourage open communication and exchange of information about sales leads, each account manager displays on a white board a list of leading sales prospects and staffing opportunities (referred to as "requisitions"). On any given day, requisitions posted usually include some staffing opportunities which are open to multiple staffing agencies, and some staffing opportunities to be filled exclusively by Insight Global. The requisitions are then displayed in the pit, and the entire sales team, including the sales manager, account managers, and recruiters, meet regularly to discuss the sales prospects, goals, and strategies of each team

member for that day. These meetings are referred to as Priority Zone, or "P-Zone." While this information is made available to authorized Insight Global employees, it is treated as highly confidential information and is not made available to persons outside the Company.

22.     Insight Global maintains certain other confidential records and reports regarding its business relationships with customers and vendors, many of which qualify as trade secrets. Insight Global's employees create and update "client sheets" for each customer. Together, client sheets comprise an account book. Account books contain confidential information concerning Insight Global's actual and prospective customers, including detailed information regarding the customer's IT systems, short and long term staffing needs, staffing preferences, and chain of command for hiring decisions. The account book also contains contact information for customers' and clients' hiring managers and vendor managers and other personal information relating to such hiring managers. The information collected is only learned after significant efforts by the Insight Global employees to develop relationships with such personnel. The information contained in the account books is a central part of Insight Global's successful sales strategy to build lasting personal and professional relationships with its customers. Account books are maintained online through Insight Global's proprietary IT system, with tiered user access to ensure that the information contained in the account books is available only to appropriate personnel – *i.e.*, current employees of Insight Global with a need to access such information.

23.     Insight Global employees maintain and update confidential spreadsheets called "call sheets" daily. Call sheets contain sales leads and contact information. Insight Global employees use these call sheets to generate their daily sales calls. Each workday, call sheets are

- 8 -

saved to the Insight Global network, the underlying information provided to their manager, and a paper copy filed in each employee's workspace. No persons outside the company receive copies.

24.     Additionally, every employee in a given office prepares and submits a weekly sales report, which is electronically circulated to employees in that office. These reports contain valuable recruiting and sales information, including details of key requisitions, client preferences, out of office client opportunities, and pricing and billing schemes.

25.     Because of Insight Global's collaborative environment, its employees are exposed to, and develop an intimate understanding of, the Company's business. Employees know Insight Global's key existing customer relationships associated with their office, its sales strategy for developing and maintaining these business relationships, and the identities of the hiring managers and vendor managers who are Insight Global's primary customer contacts in their office. Sharing this information on a confidential basis among the sales manager, account managers, and recruiters who work together in each office is essential to Insight Global's business model.

26.     Insight Global's success as a business is also substantially based upon its strong customer relationships and goodwill. These relationships and goodwill have been developed through Insight Global's substantial investment in identifying and cultivating personal relationships with the human resources and management personnel (collectively "hiring managers") of Insight Global's customers, as well as the vendor managers hired by customers to determine which vendors, such as Insight Global, may provide staffing services to the customers. Insight Global's compilations of information about its customer accounts and vendor managers are highly valuable documents that Insight Global intentionally preserves as confidential.

27.     Insight Global has to identify prospective customers that have staffing needs. Beyond identifying the company by name, Insight Global must, more importantly, identify the hiring manager(s) who has the authority to make the actual staffing decisions.   This is a challenging process, as companies are organized differently and the title of an employee does not necessarily identify whether that person has hiring authority.   Insight Global and its competitors cannot merely consult a trade periodical or some other public document or source for a list of names and contact information for the hiring managers of prospective customers.   Instead, Insight Global has to spend months, if not longer, methodically working through its processes to determine who at a prospective customer it should be contacting in order to sell its staffing services.   In this process, Insight Global collects, analyzes, catalogues, and utilizes certain client confidential information to give the Company a competitive advantage in soliciting business from these hiring managers.   Because this information is confidential and highly-valued, Insight Global secures this information on its protected network and its access-controlled offices.

28.     Insight Global must cultivate a relationship with the prospective customer hiring manager both to understand the customer's staffing needs and to develop trust.   This requires sustained contact with the customer and engagement.   Insight Global will spend hundreds of thousands of dollars and hundreds of hours of personnel time developing these relationships and earning customer good will.

29.     Insight Global has a legitimate business interest in protecting its (i) trade secrets; (ii) other valuable confidential business and financial information; (iii) relationships with its customers and clients; (iv) goodwill in the IT industry at large and in the Philadelphia area in particular; and (v) its investment in specialized training of its employees.

- 10 -

30.     During his employment with Insight Global, Greenberg had regular access to Insight Global's trade secrets, including proprietary information associated with client relationships developed, maintained, and protected by Insight Global, as well as other confidential and proprietary business information of great competitive value in the staffing industry (*e.g.*, the staffing placement history, current needs, preferences, and pricing for Insight Global's customers); the identities and personal contact information for the hiring managers and vendor managers who are Insight Global's primary customer contacts and difficult to identify from publicly available information; and other information relating to pricing for various contractor skill sets, margins and thresholds for profitability, and negotiation strategies to win and obtain business with contractors and clients.

31.     As a result of Insight Global's investment in training and developing Greenberg's skill set, he  built  important  relationships  and  goodwill  with  the  Company's  customers  and clients, consultants, and vendors through regular meetings, telephone calls, and other contact. Greenberg was also entrusted with extensive customer contact during the placement process for new candidates.

32.     Insight Global devotes substantial amounts of time and expense in training its employees, who generally do not have prior staffing experience, to prepare them to advance and succeed in building relationships with Insight Global's customers and clients.  Insight Global employees all over the country are regularly flown to Insight Global's corporate headquarters in DeKalb County, Georgia to attend trainings at the company's Professional Development Center (the "PDC").  Greenberg attended several training sessions at the PDC and also received weekly, if not daily, invaluable training by way of formal and informal mentoring during his two years of employment with Insight Global.

- 11 -

33.     Insight Global takes reasonable measures to protect its trade secrets and other legitimate business interests.  By way of example, Insight Global employees are instructed to treat as confidential the training they receive in Insight Global's proprietary sales and marketing methods and strategies, as well as any information shared with them concerning Insight Global's customers.  Additionally, Insight Global understands the irreparable injury that could be done by the disclosure of its confidential and proprietary business information and strategies by current and former employees, and also seeks to protect its substantial investment in developing strong customer relationships and goodwill.  Accordingly, contractual provisions designed to protect these interests are included in the Company's employment and separation agreements with its employees.  Specifically, employees' agreements contain provisions requiring non-disclosure, non-competition, non-solicitation, and return of Insight Global property and information at the conclusion of their employment.

34.     By way of another example, Insight Global also maintains access-controlled offices, where visitors are restricted and limited with respect to their ability to view physical documents and electronic information.

35.     Additionally, Insight Global stores its data on secure servers with restricted access.  In signing onto the system, Insight Global employees acknowledge that they are only accessing the information for legitimate business purposes.  Furthermore, confidential information stored on the system is further restricted to the Insight Global personnel who have legitimate needs to access the information.  In other words, even Insight Global employees do not have unfettered access to its confidential information and trade secrets.

36.     In sum, Insight Global's business success in a highly competitive market relies on the development and protection of its confidential information and trade secrets.

- 12 -

B.  Greenberg's Exposure to Insight Global's Confidential Information Through His Employment With the Company

37.     Greenberg began his employment with Insight Global on or about June 2, 2014, and worked for the Company through June 1, 2017.  During this time, Greenberg operated out of the Philadelphia Office, where he had the ability to sell to any client or potential client that could do business with Insight Global's Philadelphia Office.

38.     Prior to his employment with Insight Global, Greenberg had little to no experience in the staffing industry.  Thus, the sum of his knowledge about staffing and client relationships in this industry is a result of his employment with Insight Global.  The Company provided Greenberg with substantial and specialized training regarding its business model and sales and recruiting methods and strategies, as well as access to trade secrets belonging to the Company.  By way of example, almost each year of his employment, Insight Global invested in multiple training days for Greenberg where he spent his work time exclusively engaged in training.

39.     Upon starting to work for Insight Global, Greenberg was employed as a Recruiter in Training.  In that role, Insight Global provided Greenberg with specialized one-on-one and group training to prepare his for a career with the Company with a focus on IT staffing.  During this time, at various formal and informal trainings, Greenberg was exposed to trade secrets regarding the nature and structure of Insight Global's business, its recruiting and placement strategies, and its valuable training methodologies.  By way of example, Greenberg was trained on the intricacies of recruiting IT candidates, running and setting meetings in the recruiter space, selling strategies for IT staffing, and securing quality leads.

40.     On or around August 4, 2014, Greenberg was promoted to the position of Recruiter.  As a Recruiter, Greenberg continued to receive specialized training and exposure to

- 13 -

Insight Global's trade secrets and other confidential business information, with his primary responsibility being to converse with Account Managers regarding client staffing needs, and ultimately to identify and recommend the best qualified professionals to meet those needs. Additionally, because most Recruiters are ultimately on the path to sales, Greenberg was encouraged and trained to develop relationships with Insight Global's Account Managers, client hiring and vendor managers, and professionals ("contractors" or "consultants"), to develop and perpetuate goodwill on behalf of the Company.  Greenberg regularly accompanied Account Managers on outings to meet with Insight Global's clients.  He also maintained a list of contractors that he used to staff client openings, which list is commonly referred to as a "hotbook."

41.    On or around March 30, 2015, Greenberg was promoted to the position of Account Manager.  Account Managers are responsible for creating business partnerships between Insight Global and companies in their given territory.  In his position as Account Manager, and through his relationships with Insight Global's clients, Greenberg was entrusted with significant trade secrets belonging to the Company, including but not limited to actual and potential customer information and lists, customer preferences, billing rates, pricing practices, and contract expiration dates.

42.    During the period Greenberg was employed with Insight Global he traveled to Atlanta, Georgia on multiple occasions to participate in special training at the Insight Global headquarters in DeKalb County, including a three-day Recruiter training and a four-day Account Manager training, as well as sales conferences in Atlanta and Orlando.  During these trainings and conferences, Greenberg was exposed to a substantial number of Insight Global trade secrets

regarding its business methods and strategies, sales techniques, and other confidential business and/or financial information.

43.     As indicated above, while Greenberg was employed with Insight Global, he had extensive access to valuable trade secrets belonging to the Company and other confidential and proprietary business information about Insight Global's business.  He regularly viewed and discussed requisitions in the P-Zone, accessed client account books, received weekly sales and recruiting reports from employees in the Philadelphia Office, and attended meetings and special trainings where Insight Global's confidential and proprietary business information was discussed.  By virtue of being employed and extensively trained in a variety of roles at Insight Global, Greenberg was given wide-ranging access to Insight Global's trade secrets, including, but not limited to:

(a)     Information about Insight Global's customer and client relationships including customers' staffing placement history, current and long-term needs and preferences, and pricing;

(b)     Identities and personal contact information for hiring managers and vendor managers who are Insight Global's primary customer contacts, and who are difficult to identify from publicly-available information;

(c)     Proprietary information relating to pricing for various contractor skill sets, margins, and thresholds for profitability; and

(d)     Proprietary bidding procedures, recruiting methods and sales strategies for negotiating and winning business with contractors and clients.

44.     Because of Greenberg's access to Insight Global trade secrets and confidential information, Greenberg has entered into Employment Agreements containing restrictive

- 15 -

covenants with the Company.

45.     Greenberg was required to enter into an enforceable 2014 Employment Agreement containing restrictive covenants as a condition of his employment.  Greenberg entered into the 2014 Employment Agreement on or about May 29, 2014, before he had even commenced work with the Company.

46.     In consideration for and as a condition of a promotion, Greenberg separately entered into an enforceable Employment Agreement on or about March 25, 2015.

47.     In consideration for a bonus payment, Greenberg separately entered into a third enforceable Employment Agreement on or about April 5, 2016.

48.     The Employment Agreements prohibit Greenberg, during his employment with Insight Global, and for a one-year period thereafter, from being employed or performing services for another company that competes with the Company within a limited territory.

49.     The Employment Agreements further prohibit Greenberg, during his employment with Insight Global, and for a one-year period thereafter, from soliciting certain actual or prospective Insight Global customers.

50.     The Employment Agreements further prohibit Greenberg, during his employment with Insight Global or thereafter, from disclosing the Company's confidential information or trade secrets.

51.     The Employment Agreements also require Greenberg to return all Company property upon his separation from Insight Global.

52.     In executing these Employment Agreements, Greenberg agreed and acknowledged that the restrictions were reasonable and necessary to protection Insight Global's

- 16 -

confidential information and trade secrets, and that the violations of post-employment restrictions would result in the Company suffering irreparable harm.

53.     Greenberg further agreed that Insight Global would be entitled to its attorneys' fees and costs in connection with litigation to enforce the Company's rights under the Employment Agreements.

54.     Greenberg's Employment Agreements are reasonable in their temporal and geographic scope.

55.     Greenberg additionally affirmed his post-employment obligations under the Employment Agreements in his enforceable Separation Agreement, which he executed on or about May 31, 2017 and for which he received separate consideration in the form of a severance payment which he would otherwise have not received but for entering into the Separation Agreement.

56.     In the Separation Agreement, Greenberg acknowledged that he received Insight Global's "confidential business information and trade secrets, investment in recruitment and specialized training for [the Company's] employees, substantial relationships with actual and prospective customers and clients and their personnel whom [Greenberg] met through work for [the Company], [the Company's] customer good will, and its goodwill and beneficial relationship with other employees" as a result of his willingness to enter into the Employment Agreement as a condition of employment.

57.     In the Separation Agreement, Greenberg further agreed to and acknowledged his obligation to be bound by the Employment Agreements' post-employment restrictions in exchange for the consideration he received in exchange for signing the Separation Agreement.

- 17 -

58.     In the Separation Agreement, Greenberg additionally certified that he had returned all Insight Global property.

C.  Greenberg Abruptly Resigns His Employment, and Insight Global Subsequently Learns
    He Did So In Order to Join a Competitor and After He Accesses Confidential Information
    and Cancels Insight Global Client Sale Opportunities for No Legitimate Reason

59.     On or about May 31, 2017, Greenberg met with his immediate supervisor and abruptly and unexpectedly turned in his resignation.  At the time he turned in his resignation, Greenberg informed this supervisor that he planned on working with an individual who, unbeknownst to Greenberg's supervisor at that time, was the C.E.O of Tech Services.  Thus, it is clear that Greenberg fully intended to compete with Insight Global and knew he intended to do so prior to turning in his resignation and signing the Separation Agreement under false pretenses.

60.     After Greenberg resigned and signed his Separation Agreement reaffirming his post-employment restrictions from his Employment Agreement, Insight Global began to hear in the market that Greenberg had, in fact, accepted employment with Tech Services in a similar capacity and within the same region as where he worked for the Company.  As a result of this information, Insight Global investigated Greenberg's conduct and activity in the lead-up to his resignation to understand the scope of his unlawful actions and the extent to which these actions damaged the Company and could continue to do so.  Unfortunately, the results of this investigation confirmed Insight Global's concerns.

61.     Since Greenberg turned in his resignation, Insight Global determined that he was negotiating with Tech Services about his prospective position there dating back to early- to mid-May.  Specifically, Greenberg scheduled multiple calls as well as at least one in-person meeting with Peter Carlyle – Tech Services' C.E.O. – while he was still employed by Insight Global. Amazingly, Greenberg actually sent Carlyle a copy of another former Insight Global employee's

- 18 -

separation agreement.  Insight Global never gave Greenberg authorization or permission to do so.  The only rational explanation for why Greenberg sent Carlyle this document is so that Tech Services and Greenberg could surreptitiously plot out and conceal Greenberg's transition from Insight Global to Tech Services.

62.     Upon realizing that his time at Insight Global was drawing to a close, upon information and belief, Greenberg began to collect and misappropriate Insight Global's trade secret and confidential information.

63.     Specifically, in the approximately two weeks leading up to his resignation from Insight Global – i.e., during mid- to late-May 2017 – Greenberg logged on to the Company's internal computer system, referred to as ComTrak, in order to review, and, upon information and belief, download, copy, and/or print out Insight Global's confidential and trade secret information. Upon information and belief, during this time Greenberg also collected and retained hard copies of documents containing trade secrets and other proprietary confidential information belonging to Insight Global.

64.     Upon information and belief, the documents misappropriated by Greenberg included, but were not limited to: (i) details regarding Insight Global clients, including contact details for hiring managers with these clients; (ii) lists of active and former contractors which Insight Global had placed with its clients, including all relevant contact information for these contractors and their respective rates; (iii) lead sheets regarding prospective contractors and customers with whom Insight Global intended to conduct business; and, most disturbingly, (iv) certain "On the Job" reports.  These documents and others believed to be misappropriated by Greenberg contained confidential business and/or financial information, listing of customer

- 19 -

names, addresses, and telephone numbers, and/or other information relating to Insight Global's business that is secret and of value.

65.     Each of the "On the Job" reports Greenberg accessed and viewed in the weeks leading up to his departure from Insight Global identified every single contractor who had worked or were working for a given Insight Global customer not just in Philadelphia, but also across the entire country.   These reports also displayed these contractors' names, addresses, telephone numbers, email addresses, pay rates (*i.e.*, the hourly wage rate Insight Global paid the contractor), and their bill rates (*i.e.*, the amount a client would pay Insight Global for that contractor's services on an hourly basis).   Additionally, the "On the Job" reports list the names and contact information for each hiring manager for that particular Insight Global client.

66.     In the scope of his position at Insight Global, Greenberg had no legitimate reason to access, among other things, the "On the Job" reports.   Further, the information Greenberg accessed, viewed, and either downloaded and printed, included the confidential contact information for both clients and contractors of Insight Global with which Greenberg had no previous contact.   Upon information and belief, Greenberg misappropriated such trade secret information to unfairly compete with Insight Global on behalf of Tech Services.

67.     The reason for Greenberg's improper access, viewing, and either downloading and/or printing hard copy documents – especially the "On the Job" reports – became apparent when, after Greenberg's resignation from the Company, Insight Global discovered that Greenberg was working for its competitor Tech Services and had been negotiating his employment with this company at the same time he was collecting and misappropriating Insight Global's trade secret and confidential information.

68.     Significantly, through its investigation, Insight Global has subsequently become aware of a sequence of events that illuminates the unlawful acts and ill intent of Defendants. Specifically, much of the above-referenced illegitimate access by Greenberg occurred on May 22, 2017.   On May 23, 2017, Insight Global possesses information supporting the fact that Greenberg met with Carlyle, most likely to discuss employment terms and client opportunities, which would explain – but not justify – Greenberg's access of client information the day before. Moreover, on May 24, 2017, Greenberg began to cancel several meetings with several hiring managers for certain Insight Global clients for which Greenberg had been provided trade secret and confidential information.  Upon information and belief, Greenberg – solely for the benefit of Tech Services – purposefully delayed these meeting until he began working for Tech Services to allow Greenberg and his new employer to improperly benefit from these relationships at the expense of Insight Global.  Upon information and belief, Greenberg and Tech Services intended to and did place Greenberg in a role that is similar to that which he held at Insight Global.

69.     Upon information and belief, Greenberg began employment with Tech Services, a direct competitor of Insight Global's, shortly after his separation from the Company, and now provides similar staffing services in the Philadelphia area on behalf of Tech Services as he did while employed by Insight Global.  Tech Services' Metropolitan Philadelphia office is located at 800 N. Church Street, Suite 105, Moorestown, New Jersey 08057, which is less than 11 miles from Insight Global's Philadelphia Office, where Greenberg was based while employed with Insight Global.

70.     Upon information and belief, Greenberg has and is currently unlawfully soliciting business from one or more Insight Global's clients on behalf of Tech Services using information and tactics that he obtained through the misappropriation of Insight Global's trade secrets.  In

- 21 -

fact, Insight Global possesses information indicating that Tech Services intends to target and solicit the Philadelphia Office's second largest client – likely with Greenberg leading the charge.

71.     As set forth above, the Company understands that Greenberg unlawfully misappropriated Insight Global's trade secrets in the weeks prior to his resignation from employment with the Company.  Upon information and belief, Greenberg has and/or is using or disclosing these trade secrets belonging to Insight Global in violation of state and federal law as well as the Trade Secret and Non-Disclosure Provisions in his Employment Agreement

72.     Upon information and belief, Greenberg is currently employed by Tech Services in the same or a similar position as that which he held when employed by Insight Global.  In this capacity, Greenberg is, among other things, recruiting for direct-hire positions, including communicating and regularly interfacing with hiring and vendor managers at companies in and around the Metropolitan Philadelphia area about their staffing needs, identifying and recommending qualified candidates, and placing and communicating with contractors.  Upon information and belief, in furtherance of these objectives, Greenberg has utilized the trade secret information he misappropriated from Insight Global to more effectively, and unlawfully, target Insight Global customers.

73.     Greenberg has approached at least one Insight Global client on behalf of Tech Services seeking to obtain business.  The client at issue is a manufacturer with operations in the Metropolitan Philadelphia area with which Insight Global had an established relationship to provide staffing services ("Customer").  Importantly, and upon information and belief, the trade secret documents misappropriated by Greenberg contain detailed information concerning Customer and the hiring manager whom Greenberg contacted.  In doing so, Greenberg caused

- 22 -

significant and irreparable harm to the advantageous business relationship between Insight Global and Customer.

74.     In violation of the express terms of his Employment Agreements, Greenberg also did not notify Insight Global of his employment with Tech Services at least fourteen (14) days prior to the commencement of his employment with Tech Services, and at no time has Greenberg provided Insight Global with a sworn affidavit stating that his employment with Tech Services shall not violate the terms of his Employment Agreement with Insight Global.

75.     Further, Greenberg's unlawful competition through the actual and threatened use of Insight Global's trade secrets, in breach of his Employment Agreement and the Separation Agreement, stands to cause significant harm to the Company due to Greenberg's substantial knowledge of the Company's customers and clients, including several key accounts, and his training in the Company's trade secret sales methods and strategies.

76.     Additionally, it is impossible for Greenberg to perform his job duties for Tech Services without using or disclosing Insight Global's trade secrets.  Even if Tech Services were to instruct Greenberg not to use or disclose such trade secret and confidential information, it is impossible for Greenberg to perform his job functions without relying on his knowledge of Insight Global's trade secrets, including information regarding current and prospective clients, including identity, contact information, and preferences of hiring and vendor managers, and sales, marketing, and recruiting strategies and techniques.

77.     Greenberg also continues to misrepresent himself to the market (and conceal his current employment) by maintaining on his LinkedIn account that he works for Insight Global. Thus, any potential customer using LinkedIn and seeking to contact Insight Global may contact Greenberg under the false understanding that he is acting on the Company's behalf per his

- 23 -

misleading profile.   This deception interferes with the Company's ability to enter into new or expanded customer relationships.  Insight Global cannot readily ascertain lost opportunities as a result of this false representation to the market.

78.   As a result of Greenberg's misappropriation of Insight Global's trade secrets, the Company has and will continue to suffer irreparable harm in the form of loss of goodwill, actual loss of customers, exposure of its trade secrets and resulting loss of competitive advantage, among other things.

79.   As a direct consequence of Greenberg's wrongful conduct, Insight Global has incurred substantial expense to enforce Greenberg's Employment Agreement and his Separation Agreement.

D.   Tech Services Gives Inaccurate and Misleading Information to Insight Global Regarding Greenberg's Employment and Job Duties

80.   Tech Services is an IT staffing company that competes directly with Insight Global for the recruitment of talent to place at clients and for clients themselves.  According to its website, Tech Services uses its "extensive IT management expertise to ensure you attract, develop and retain the best IT professionals in the industry.  With over 30 years of industry expertise we believe project management, training and tracking are the critical components to IT success.  We are not just another staffing company…" See http://techservicesllc.com/about/ (last viewed on August 30, 2017).  Thus, Greenberg is prohibited by his Employment Agreements from accepting employment or performing services for Tech Services in the Philadelphia metro region.

- 24 -

81.     Upon information and belief, Tech Services has instructed Greenberg that he does not need to comply with the contractual obligations he owes to Insight Global under the Employment Agreements and the Separation Agreement.

82.     Insight Global has not authorized Greenberg to possess, use, disclose, or exploit its confidential business information during his Tech Services employment or at any other time.

83.     Upon learning that Greenberg had in fact gone to a competitor, Insight Global contacted Tech Services to understand Greenberg's role, advise Tech Services of its concerns, and attempt to resolve this dispute without resorting to litigation.  Unfortunately, Carlyle, acting on behalf of Tech Services, provided kaleidoscopic and misleading information over the course of several conversations, signaling to Insight Global that Greenberg's unlawful actions were undertaken with the knowledge, approval, cooperation, and for the benefit of Tech Services.

84.     First, Tech Services initially claimed that Greenberg was not and would not be soliciting client accounts he handled on behalf of Insight Global. Instead, Tech Services asserted that Greenberg's role was to rebuild its sales force through recruitment because that capacity had been diminished through attrition.

85.     Thereafter, Tech Services claimed that Greenberg was working exclusively in North New Jersey, New York City, and Washington, D.C. in a sales capacity, but not within the immediate vicinity of where he worked for the Company.

86.     When Insight Global became aware from the market that Greenberg was in fact soliciting at least one Insight Global-assigned client – namely, Customer – Tech Services at first denied the conduct but subsequently conceded that, contrary to prior claims, Greenberg would in fact be selling and managing accounts in the metro Philadelphia area, just as he did for Insight Global.

- 25 -

87.     Upon information and belief, Greenberg has used and is using Insight Global's confidential business information to conduct business for Tech Services and to solicit Insight Global's current and prospective clients, including the Customer, to do business with Tech Services in violation of the Employment Agreement and the Separation Agreement.  Insight Global is informed and believes and thereon alleges that Tech Services has and had knowledge of, and approved, these unlawful actions.

88.     Further, Greenberg has taken steps in an effort to keep his illegal activities hidden from disclosure.  Insight Global is informed and believes and thereon alleges that Greenberg has done these things in concert with Tech Services in order to cover up the illegal nature of his and Tech Services' activities.

89.     In knowing of the restrictive covenants in Greenberg's Employment Agreement, hiring Greenberg, encouraging Greenberg to solicit Insight Global's current and prospective clients using Insight Global's confidential and trade secret information, and assisting Greenberg in covering up his illegal actions and his current employer, Tech Services has tortuously interfered with Insight Global's contractual relations – namely, the Employment Agreement and the Separation Agreement.

90.     Despite Insight Global's efforts, it is clear that Defendants have no intent of honoring Greenberg's obligations and will continue to violate the law absent legal recourse.

## COUNT I
### Misappropriation of Trade Secrets under the DTSA – 18 U.S.C. § 1832 – Against Defendants

91.     Insight Global adopts and realleges the allegations contained in paragraphs 1 through 90 as if fully set forth herein.

92.     Insight Global operates its business in interstate commerce across the United States.

93.     As set forth above and upon information and belief, Greenberg improperly retained Insight Global's trade secret and confidential information after his employment relationship with Insight Global ended. The trade secrets misappropriated by Greenberg included information concerning Insight Global's contractors as well as client-related information, in violation of his Employment Agreement.  This and other information Insight Global believes Greenberg misappropriated contained confidential business and/or financial information, listing of customer names, addresses, and telephone numbers, and/or other information relating to Insight Global's business that is secret and of value.

94.     The above-documents qualify as "trade secrets" under the DTSA, as defined under 18 U.S.C. § 1839(3).  Insight Global has its employees sign an agreement prohibiting use and disclosure of such trade secrets outside of the Company and demanding their return upon termination of employment.   Such information required substantial resources, time and investment by Insight Global to create, collect and/or develop, and it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means.  Greenberg has used, is using, and inevitably will continue to use, Insight Global's trade secrets on behalf of Tech Services unless enjoined.

95.     Upon information and belief, Greenberg misappropriated Insight Global's trade secrets at the direction of and for the benefit of Tech Services.  Tech Services has knowingly been the beneficiary of Greenberg's misappropriation, as it has permitted him to solicit the very customers for which he was exposed to Insight Global's confidential information regarding thereof, amongst other uses of Insight Global trade secrets for unlawful purposes.

96.     Defendants' actions described herein constitute a willful and malicious misappropriation of Insight Global's trade secrets under 18 U.S.C. § 1836(b)(2).

97.     Defendants' misappropriation of Insight Global's trade secrets is causing, and threatens to continue causing, Insight Global to suffer irreparable harm, including but not limited to loss of clients, loss of reputation and customer goodwill, and loss of its investment in its trade secrets.  This harm cannot be adequately remedied at law and requires permanent injunctive relief.

98.     Upon information and belief, Defendants have used Insight Global's trade secrets and confidential information to compete with Insight Global and are continuing to do so.

99.     Insight Global is entitled to full compensatory and consequential damages, as well as full attorneys' fees, costs and expenses.

100.    Because Defendants' DTSA violations have been willful and malicious, Insight Global is entitled to exemplary damages of no more than twice the amount of damages for any actual loss and any unjust enrichment.

101.    As such, Insight Global demands judgment against Defendants for their violations of the DTSA in the form of compensatory and exemplary damages, permanent injunctive relief, prejudgment interest, an award of Insight Global's reasonable attorneys' fees and costs pursuant to both the Employment Agreement and 18 U.S.C. § 1836(b)(3)(D), and such other relief as the Court deems just and proper.

## COUNT II
### Misappropriation of Trade Secrets under the PUTSA – Against Defendants

102.    Insight Global adopts and realleges the allegations contained in paragraph 1 through 101 as if fully set forth herein.

103.    The documents and information described in Paragraphs 62-67 and elsewhere herein qualify as "trade secrets" under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), as that term is defined in 12 Pa. C. S. § 5302.

- 28 -

104.    As expressly acknowledged in the Employment Agreements, Insight Global considers these items to be confidential and proprietary trade secrets, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

105.    Upon information and belief, Greenberg improperly retained documents and information containing Insight Global's trade secrets in violation of the Employment Agreements.

106.    Upon information and belief, Greenberg has used, is using, and inevitably will continue to use Insight Global's trade secrets on behalf of Tech Services unless enjoined.

107.    Upon information and belief, Greenberg misappropriated Insight Global's trade secrets at the direction of and for the benefit of Tech Services.  Tech Services has knowingly been the beneficiary of Greenberg's misappropriation, as it has permitted him to solicit the very customers for which he was exposed to Insight Global's confidential information regarding thereof, amongst other uses of Insight Global trade secrets for unlawful purposes.

108.    Defendants' actions described herein constitute the willful misappropriation of Insight Global's trade secrets under the PUTSA.

109.    Defendants' misappropriation of Insight Global's trade secrets is causing, and threatens to continue causing, Insight Global to suffer irreparable harm, including but not limited to loss of clients, loss of reputation and customer goodwill, and loss of its investment in its trade secrets.  This harm cannot be adequately remedied at law and requires permanent injunctive relief.

110.    Insight Global is entitled to full compensatory and consequential damages, as well as full attorneys' fees, costs and expenses.

111.    Accordingly, Insight Global demands judgment against Defendants for compensatory damages, permanent injunctive relief, prejudgment interest, an award of Insight Global's reasonable attorneys' fees and costs pursuant to the Employment Agreement as well as 12 Pa. C. S. § 5305, and such other relief as the Court deems just and proper.

## COUNT III
### Breach of Employment Agreement – Against Greenberg

112.    Insight Global adopts and realleges the allegations contained in paragraphs 1 through 111 as if fully set forth herein.

113.    Greenberg continues to be bound by his Employment Agreements, which are enforceable agreements between him and Insight Global.

114.    Greenberg's Employment Agreements prohibit him from working for a competitor of Insight Global.

115.    Tech Services is a direct competitor of Insight Global, providing IT staffing services to clients.

116.    Greenberg has accepted and commenced employment with Tech Services, and is performing services on behalf of Tech Services that direct compete with the services he provided on behalf of Insight Global.

117.    Greenberg has further violated his Employment Agreements by soliciting Insight Global clients and, upon information and belief, disclosing and using Insight Global confidential information and trade secrets for the benefit of himself and Tech Services.

118.    Greenberg has violated other provisions of his Employment Agreements, such as his failure to notify Insight Global of the identity of his current employer and, upon information and belief, his failure to return all Company materials.

- 30 -

119.    As a result of Greenberg's actions in violation of the Employment Agreement, Insight Global has suffered, and continues to suffer, substantial and irreparable injury.

120.    Because of Greenberg's multiple, willful, and malicious breaches of the Employment Agreement, Insight Global demands judgment against his for compensatory damages, permanent injunctive relief, prejudgment interest, attorneys' fees and costs, and such other relief as the Court deems just and proper.

**COUNT IV**
Breach of Separation Agreement – Against Greenberg

121.    Insight Global adopts and realleges the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

122.    For valuable consideration, Greenberg entered into the Separation Agreement, which contained several provisions and restrictive covenants he later breached, including his commitment to abide by the restrictive covenants within his Employment Agreements (the "Reaffirmation Provision"), certification that he returned all of Insight Global's property ("the Return of Property Affirmation).

123.    Insight Global has performed its obligations under the Separation Agreement.

124.    Greenberg has breached the Reaffirmation Provision and the Return of Property Affirmation by: (i) soliciting clients or customers of Insight Global on behalf of Tech Services; (ii) retaining the Insight Global trade secret and confidential information and documentation after both his employment with Insight Global ended and he entered into the Separation Agreement; and (iii) by using, disclosing, or retaining Insight Global's trade secret and confidential business information in competition with Insight Global on behalf of Tech Services.

125.    As a result of Greenberg's actions in violation of the Separation Agreement, Insight Global has suffered, and continues to suffer, substantial and irreparable injury.

- 31 -

126.    Greenberg agreed, in writing, that Insight Global would suffer irreparable harm as a result of any actions taken by his in violation of the Employment Agreement, which he reaffirmed in the Separation Agreement, and that remedies at law would be inadequate.  In the Separation Agreement, Greenberg further acknowledged and agreed that Insight Global would be entitled to immediate injunctive relief and other equitable remedies in the event of a breach of the Employment Agreement by him, and that the Restricted Period would be tolled for as long as he is and remains in breach of his obligations under that agreement.

127.    Because of Greenberg's multiple, willful, and malicious breaches of the Separation Agreement, Insight Global demands judgment against his for compensatory damages, permanent injunctive relief, prejudgment interest, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT V
### Fraud – Against Greenberg

128.    Insight Global adopts and realleges the allegations contained in paragraphs 1 through 127 as if fully set forth herein.

129.    Greenberg made misrepresentations and omissions of material facts to Insight Global in entering into the Separation Agreement with Insight Global, as he knew at that time that he intended to compete with Insight Global, as shown by: (i) the significant contact he had with Tech Services C.E.O; and (ii) upon information and belief, his misappropriation of Insight Global's confidential and trade secret information.   These representations were material and induced Insight Global to pay Greenberg the severance payment to which he was otherwise not entitled.   Had Insight Global known the true facts, it would have immediately put a stop to Greenberg's unlawful actions and would not have issued the severance payment to him.

- 32 -

130.    Greenberg representations to Insight Global as his compliance with the Return of Property Affirmation and his agreement to the Reaffirmation Provision were false and intended to induce Insight Global to issue the severance payment to Greenberg.  Greenberg knew that his representations were false when they were made.  Greenberg intended that Insight Global rely on his misrepresentations.  The conduct of Greenberg was such as to rise to the level of fraud.

131.    At the time the Separation Agreement was executed and the severance payment specified therein was issued to Greenberg, Insight Global had no knowledge of the falsity of Greenberg's representations and omissions of material facts.  Insight Global reasonably and justifiably relied upon Greenberg's representations or omissions in deciding to pay Greenberg the severance payment.

132.    Insight Global has been injured as a direct and proximate result of the foregoing fraud in in an amount to be proven at trial.  Additionally, Greenberg committed these acts willfully and wantonly, and, accordingly, Insight Global is entitled to recover punitive damages in an amount to be determined by a trier of fact.

### COUNT VI
#### Breach of the Duty of Loyalty – Against Greenberg

133.    Insight Global adopts and realleges the allegations contained in paragraphs 1 through 132 as if fully set forth herein.

134.    Greenberg owed Insight Global a duty of loyalty, yet breached his duties of loyalty to Insight Global by, among other things, misappropriating Insight Global's confidential, proprietary and/or trade secret information while he was still employed by Insight Global for the purpose of using it to compete with Insight Global in his new position at Tech Services, which, upon information and belief, Greenberg already accepted prior to his resignation from Insight Global.

- 33 -

135.    As a result of these breaches, Insight Global has suffered and will continue to suffer damages, including irreparable damages.

136.    Insight Global has been injured as a direct and proximate result of Greenberg's breaches of his duty of loyalty to Insight Global and, thus, seeks monetary damages in an amount to be proven at trial, as well as injunctive relief against Greenberg to prevent further harm.

## COUNT VII
### Tortious Interference with Existing and
### Prospective Business Relations – Against Defendants

137.    Insight Global adopts and realleges the allegations contained in paragraphs 1 through 136 as if fully set forth herein.

138.    As described above, Insight Global had an advantageous business relationship with Customer and intended to continue to seek the business of and enter into additional agreements with Customer.

139.    Defendants knew that: (i) Insight Global had a business relationship with Customer; (ii) Customer had entered into multiple agreements for Insight Global's provision of staffing services to Customer; and that (iii) Insight Global intended to continue to seek the business of and enter into additional agreements with Customer.

140.    Despite having this knowledge, Defendants knowingly, intentionally, and maliciously decided, endeavored, and sought to engage in acts which would cause irreparable damage to the agreements between Customer and Insight Global and Insight Global's advantageous existing and prospective business relationships with Customer.

141.    Defendants intentionally, knowingly, maliciously, and without justification interfered with the existing and prospective business relationships between Insight Global and Customer.

- 34 -

142.    As a direct result of the willful and improper conduct of Defendants, the existing and prospective business relationships between Insight Global and Customer suffered substantial harm.

143.    The conduct of Defendants in interfering with Insight Global's economic relationship was intentional, willful, and calculated to cause damage to this existing and prospective business relationship.

144.    The improper conduct of Defendants was committed with actual malice and ill will toward Insight Global, and with the intentional and improper purpose of causing irreparable damage.

145.    Accordingly, Insight Global demands judgment against Defendants for their tortious interference with Insight Global's existing and prospective business relationships with Customer in the form of compensatory and punitive damages, prejudgment interest, Insight Global's reasonable attorneys' fees and costs, and  such other relief as the Court deems just and proper.

### COUNT VIII
#### Tortious Interference with Greenberg's Employment
#### Agreement and Separation Agreement – Against Tech Services

146.    Insight Global adopts and realleges the allegations contained in paragraphs 1 through 145 as if fully set forth herein.

147.    As described above, Insight Global entered into binding Employment Agreements with Greenberg which contained certain restrictive covenants, including restrictions on competition, solicitation, and disclosure of trade secrets and confidential information.

- 35 -

148.     Further, and as described above, Insight Global entered into a binding Separation Agreement with Greenberg which contained certain restrictive covenants, including the Reaffirmation Provision and the Return of Property Affirmation.

149.     Upon information and belief, Tech Services knew that Insight Global and Greenberg had a contractual relationship via the Separation Agreement and the Employment Agreement as well as the terms of the restrictive covenants contained therein.

150.     Despite having this knowledge, upon information and belief Tech Services knowingly, intentionally, and maliciously decided, endeavored, and sought to engage in acts which intended and did induce Greenberg to breach, among other things, the Non-Competition, Non-Solicitation, Non-Disclosure, and Trade Secret Provisions of the Employment Agreement as well as the Reaffirmation Provision of the Separation Agreement.

151.     The improper conduct of Tech Services was committed with actual malice and ill will toward Insight Global, and with the intentional and improper purpose of causing irreparable damage.

152.     Accordingly, Insight Global demands judgment against Tech Services for it tortious interference with Greenberg's Employment Agreement in the form of compensatory and punitive damages, prejudgment interest, Insight Global's reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Insight Global respectfully demands that judgment be made and entered in its favor and against Greenberg and Tech Services as follows:

(a)     Enter an Injunction enjoining Greenberg from further violating the Trade Secret, Non-Solicitation Provisions of the Employment Agreements, as well as the other restrictive

covenants in the Employment Agreement designed to protect Insight Global's trade secrets, and requiring Greenberg to return any Insight Global trade secrets in his possession pursuant to the Return of Materials Provision;

(b)     Award Insight Global damages in an amount to be determined at trial for his breaches of the Employment Agreements;

(c)     Require Defendants to account to Insight Global for all revenues and profits derived from their misappropriation of Insight Global's trade secrets;

(d)     Award Insight Global actual, liquidated and/or compensatory damages in an amount to be determined at trial against Greenberg for his misappropriation of Insight Global's trade secrets;

(e)     Award Insight Global exemplary damages pursuant to (i) the DTSA and (ii) the PUTSA due to Defendants' willful and malicious misappropriation of Insight Global's trade secrets;

(f)     Enter an Injunction enjoining Greenberg from further violating the Separation Agreement and requiring Greenberg to return any Insight Global trade secrets in his possession pursuant to the Return of Property Affirmation;

(g)     Award Insight Global damages in an amount to be determined at trial for his breaches of the Separation Agreement;

(h)     Award Insight Global actual, liquidated, and/or compensatory damages as well as punitive damages in an amount to be determined at trial against Greenberg for his fraudulent actions;

(i)     Enter an Injunction enjoining Greenberg from further breaching the duty of loyalty he owed to Insight Global;

(j)     Award Insight Global actual, liquidated, and/or compensatory damages for Greenberg's breach of the duty of loyalty;

(k)     Enter an injunction enjoining Defendants from further interfering with Insight Global's existing and prospective business relations.

(l)     Award Insight Global actual, liquidated and/or compensatory damages as well as punitive damages in an amount to be determined at trial against Defendants for their tortious interference with Insight Global's existing and prospective business relations;

(m)     Award Insight Global actual, liquidated and/or compensatory damages as well as punitive damages in an amount to be determined at trial against Tech Services for its tortious interference with Greenberg's Employment Agreement;

(n)     Award Insight Global prejudgment interest against Greenberg and Tech Services for the claims asserted against them herein;

(o)     Award Insight Global all costs and attorneys' fees it incurs in the prosecution of this lawsuit pursuant to both the Attorney Fees Provision of the Employment Agreement and relevant Pennsylvania statutory authority; and

PHIL1 6438756v.2

(p)    Award Insight Global such other and further relief as this Court deems just and proper.

Respectfully submitted,

Jonathan S. Krause, Esq. (PA I.D. 93817)
KLEHR HARRISON
HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
ph (215) 569-4496
fax (215) 568-6603
jkrause@klehr.com

Matthew J. Simmons, Esq. (*pro hac vice* application forthcoming)
Georgia Bar No. 561107
4170 Ashford Dunwoody Road, NE
Suite 250
Atlanta, Georgia 30319
Phone: (404) 257-7900
Facsimile: (404) 257-1070
Matt.Simmons@insightglobal.com

*Attorney for Plaintiff Insight Global, LLC*

DATED:  September 1, 2017